UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOSEPH PECAR,

*Plaintiff-Appellant,*

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY,

*Defendant-Appellee.*

No. 02-1866

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-01-1941-AW)

Argued: June 5, 2003

Decided: August 12, 2003

Before WILKINS, Chief Judge, WIDENER, Circuit Judge,
and Robert R. BEEZER, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Michael John Winkelman, MCCARTHY & COSTELLO, L.L.P., Bowie, Maryland, for Appellant. Kevin Joseph Willging, William Jacob Kobokovich, Jr., Baltimore, Maryland, for Appellee. **ON BRIEF:** Kevin J. McCarthy, MCCARTHY & COSTELLO, L.L.P., Bowie, Maryland, for Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

This case arises out of a medical malpractice action that plaintiff Joseph Pecar filed against the estate of his former doctor, Dr. Arthur Passarelli, in the Circuit Court for Prince George's County, Maryland. Pecar received a default judgment in the amount of $1,265,308.00 in the state court. Seeking to collect the judgment, the plaintiff filed the present action against the defendant, St. Paul Fire and Marine Insurance Company, alleging that the defendant had issued a professional liability insurance policy to the doctor which was in effect at the time that the malpractice occurred. The plaintiff originally filed his suit to collect the default judgment in the state court claiming breach of contract and bad faith which was removed to the United States District Court, based on diversity. The district court granted summary judgment in favor of the defendant on both the breach of contract and bad faith claims, holding that there was insufficient evidence to support a finding that the defendant had indeed issued a liability policy during the time in question. The plaintiff appeals the July 11, 2002 judgment, claiming that he submitted sufficient evidence to allow a trier of fact to determine that a St. Paul liability insurance policy was in effect at the time of the operation which covered Dr. Passarelli. The argument goes that the district court erred in refusing to apply a spoliation of evidence rule. We affirm.

I.

On May 27, 1966, when the plaintiff was six months old, Dr. Arthur Passarelli performed surgery on the plaintiff to repair a bilateral hernia and bilateral hydrocele. Dr. Passarelli died three years later in 1969. About 30 years after the surgery, upon marriage, the plaintiff discovered that he was sterile. He then brought suit in a Maryland court against Dr. Passarelli's estate, alleging that the doctor was negligent in performing the 1966 surgery, resulting in the plaintiff's steril-

ity. Initially, the plaintiff contacted St. Paul and requested that it defend the doctor's estate. The defendant refused, however, claiming that it did not have any record of a policy issued to the doctor for the time period in question. The plaintiff secured a default judgment against the estate in the amount of $1,265,308.00.

Seeking to collect the judgment, the plaintiff filed an action in state court against the defendant. The case was removed to federal court on July 2, 2001. On that same day, the plaintiff filed an amended complaint seeking: (1) the amount of the state court judgment based upon his allegation that the defendant insured Dr. Passarelli at the time of the injury and the failure to pay is a breach of the contract; and (2) compensation for the defendant's bad faith in failing to defend the Estate in the state court action and failing to pay the judgment amount.

On August 30, 2001, the defendant filed a motion to dismiss as to the bad faith claim. Following discovery, on February 28, 2002, the defendant filed a motion for summary judgment as to both counts on the basis that the plaintiff is unable to carry his burden of establishing that the defendant issued a professional liability insurance policy covering the acts of Dr. Passarelli. A hearing was held on July 1, 2002 to address both the motion to dismiss and the motion for summary judgment.

The following evidence was presented at the hearing. Neither the plaintiff, nor the Estate's personal representative, nor the defendant[1] had found any record of a professional liability policy that was in effect for Dr. Passarelli on May 27, 1966, the date of the injury. Riggs Bank, which initially administered the Estate, had no records relating to Dr. Passarelli's insurance coverage for the year 1966. Additionally, the Orphan's Court in which the estate was probated did not have any record of evidence which tended to show an insurance policy in effect for that time period. In the absence of such a policy, the plaintiff offered two documents in support of his allegations that he argues show that the defendant insured Dr. Passarelli on May 27, 1966, and

---

[1]There is evidence in the record that the defendant had an in-house document retention rule, under which an old policy would likely have been destroyed in the regular course of business after ten years.

that the policy was such that it covered the type of medical malpractice for which the plaintiff secured his judgment.

First, the plaintiff produced a Certificate of Insurance dated November 1, 1962 that was issued by the defendant to Holy Cross Hospital, which relates that it provided liability insurance coverage for Dr. Passarelli[2] effective May 1, 1962 and expiring May 1, 1963.

Second, the plaintiff offered a Statement of Transactions, which was filed by Riggs Bank, the original representative of Dr. Passarelli's estate, in the Orphan's Court for Prince George's County, Maryland, after the doctor's death in 1969. That statement indicates that the doctor had personal catastrophe insurance coverage from March 27, 1969 until September 1, 1970, as evidenced by the following notation:

J. Blaise Desibour & Co.
St. Paul Policy 566XB5903 $1,000,000
Top Brass Personal Catastrophe Liab
3/27/69 to 9/1/70 R PR

The parties do not know who prepared this document or the source of the information contained in the document. There is evidence that the number 5 at the beginning of the policy number indicates that it is a liability policy, that the number 66 indicates that the policy was issued from the company's headquarters, that the letters XB show that it was an excess policy, and that the last four digits indicate the number of Top Brass policies sold during that time. An excess policy means that any coverage that it provided was in excess over a specifically listed primary policy, such as an umbrella over a homeowner's policy. The Top Brass excess policy could have been written over another primary policy issued by the defendant or a primary policy issued by some other company. There is no reference in the statement from the records of the Orphan's Court to any type of primary policy. In order to prove coverage on May 27, 1966, the plaintiff offered additional evidence that the company that issued the 1962-63 Certifi-

---

[2]In 1962, Dr. Passarelli maintained offices in Silver Springs, Maryland and Chillum, Maryland, and also practiced and performed procedures at Holy Cross Hospital.

cate of Insurance for St. Paul was succeeded in business by J. Blaise Desibour, the company that was listed on the statement to the Orphan's Court as having issued the excess policy.

Following a presentation of all of the evidence, the district court, on July 11, 2002, granted the defendant's motion for summary judgment as to both counts. The district court held that the plaintiff failed to produce evidence of the existence or terms of a liability insurance policy issued by the defendant that would cover the acts of Dr. Passarelli on May 27, 1966, and that he failed to make a threshold showing under Rule 1004 of the Federal Rules of Evidence to introduce secondary evidence to establish the existence and contents of the policy. Additionally, the district court held that because there was no evidence that the defendant knowingly, intentionally, or willfully destroyed the policy, if a policy existed, the plaintiff could not rely on the spoliation of evidence rule.

In summary, the plaintiff was unable to prove that St. Paul ever issued a liability policy which covered the acts of Dr. Passarelli on May 27, 1966. The district court correctly assumed, for the purposes of its decision, that the Certificate of Insurance was proof of such liability insurance from 1962 until 1963, and the statement from the records of the Orphan's Court was proof of such liability coverage from 1969 until 1970. But it correctly held that there was no evidence to prove liability coverage for the acts of Dr. Passarelli on May 27, 1966.

The situation which the district court faced at the time of the hearing on the motion for summary judgment was the implicit claim of Pecar that the in-house rule of St. Paul in which such records were destroyed after ten years amounted itself to a spoliation of evidence because professional liability policies for physicians were based on occurrences, which might have been the subject of litigation more than ten years after the date of the occurrence. The district court declined to apply a spoliation of evidence rule because it declined to find that such a liability policy existed on May 27, 1966, or that St. Paul had knowingly, intentionally, or wilfully destroyed any such policy, if it existed.

As did the district court, we have examined all of the documents offered by the plaintiff as evidence of coverage in this case, and we

have examined the various depositions and other evidence which has been filed. With respect to the sufficiency of the evidence, the district court concluded:

> Going to trial with this lack of evidence would be asking the finder-of-fact to assume, presume or speculate about the ultimate fact of coverage, and then to guess about the terms of coverage.

As to the spoliation of evidence, the district court concluded:

> Here plaintiff has produced no evidence, nor does the court find any evidence, that supports an inference that defendant knowingly, intentionally or wilfully destroyed the policy, if any such policy existed. Thus, the court finds the spoliation of evidence rule inapplicable.

Upon our examination of the record and following argument of counsel, we are of opinion that the district court came to the correct conclusion in this case.

The judgment of the district court is accordingly

*AFFIRMED*.